UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VIRGEN M. CRUZADO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 6220 |
| | ) | |
| v. | ) | Magistrate Judge Gilbert |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Virgen M. Cruzado ("Claimant") brings this action under 42 U.S.C.§ 405(g)

seeking reversal or remand of the decision of Respondent Carolyn W. Colvin, Acting

Commissioner of Social Security ("Commissioner"), denying her application for disability

insurance benefits under sections 216(i) and 223 of the Social Security Act. The parties have

consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)

and Local Rule 73.1 for all proceedings, including entry of final judgment. [ECF No. 13].

This matter is before the Court on the parties' cross-motions for summary judgment.

[ECF Nos. 22, 24]. For the reasons discussed herein, Claimant's motion for summary judgment

[ECF No. 22] is denied. The Commissioner's motion for summary judgment [ECF No. 24] is

granted, and the decision of the Commissioner is affirmed.

## I. BACKGROUND

### A. Procedural History

Claimant filed an application for disability and disability insurance benefits on April 7,

2010, alleging a disability onset date of January 6, 2010. R. 13. The SSA initially denied the

application on June 23, 2010, and again upon reconsideration on October 25, 2010. *Id.* Claimant

filed a timely request for an administrative hearing on December 8, 2010, which was held before

an administrative law judge ("ALJ") on February 7, 2012. *Id.* Claimant personally appeared and

testified at the hearing, and she was represented by counsel. R. 32. Aimee Mowery, a vocational

expert, also appeared and testified at the hearing. *Id.*

The ALJ issued a written decision on May 18, 2012, finding that Claimant was disabled

from January 6, 2010 through February 28, 2011. R. 13–24. As of March 1, 2011, however, the

ALJ found that Claimant was not disabled. *Id.* The Social Security Appeals Council denied

Claimant's request for review on January 31, 2013, leaving the ALJ's decision as the final

decision of the Commissioner. R. 1–3. Claimant seeks review in this Court pursuant to 42 U.S.C.

§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## B. Hearing Testimony

### 1. Claimant Virgen M. Cruzado

Claimant was 44 years old at the time of the hearing. R. 32, 57. She was single with no

children under the age of 18. R. 33. She had one year of college education. R. 33–34.

Claimant testified that she suffers from back pain in the L5-S1 region of her spine. R. 35.

She testified that the pain is so bad sometimes that it prevents her from moving. *Id.* She testified

that on the date of the hearing the pain was an eight out of ten. *Id.* To help her pain, Claimant

used Hydrocodone and Gabapentin. R. 36. Claimant reported that she is currently not receiving

any treatment for her back because she does not have a medical card, and the last time she

received treatment was when she got an ultrasound for her back in December 2010. R. 37.

Claimant testified that she has asthma and she uses inhalers and a nebulizer for treatment.

R. 36.

Claimant testified she gets daily headaches for which she sometimes takes medication. R. 37–38. She testified without the medication, she suffers extreme pain and blurred vision, and there are some days where even the medication does not help. R. 37. Claimant reported that if she does not have medication available she will try Advil or Tylenol, which does not help. *Id.* She reported that her regular physician prescribes the medication, and that he would refer her to another physician if she needed more help. R. 38.

Claimant testified the most she can lift is a gallon of milk and that she needs assistance grocery shopping. R. 39. She needs a railing to help her climb stairs or, alternatively, have someone help her. *Id.* Claimant testified that she uses a cane and can walk up to three blocks with it. *Id.* She can stand for about an hour while using the cane. *Id.* She has difficulty bending, stooping, crouching, crawling, and kneeling. She can generally use her hands and reach but if she stretches too far it hurts. R. 40.

Claimant testified she needs help getting in the bathtub and getting dressed on cold days. R. 41. She reported she can drive for about a twenty-minute trip. R. 42. She goes to church once a week. R. 45. Claimant testified she can make a sandwich, use the microwave, do the dishes, and make her bed. R. 42. She can sweep and mop the floor but she has to sit on a chair with wheels while she does it. R. 43. She testified she cannot do the laundry, because she has to stand for too long, but she can help fold clothes. *Id.* She reported she cannot take out the garbage. R. 44.

Claimant testified she can sit for a half-hour before her legs start tingling; she then has to get up and move around. R. 47. She testified her legs get swollen two to three times in a week. *Id.* She gets some relief from taking Diabem and Furosemide. R. 48. She also gets relief from

lying down and from elevating her legs. *Id.* She has to wear slip-on shoes because of the swelling. *Id.*

Claimant testified she has sleep apnea and uses a C-pap. R. 40. She testified she has to have her family keep an eye on her because if she falls into too deep a sleep she might not wake up. R. 40–41. She sometimes takes one-hour naps during the day. R. 41.

Claimant testified that she has radiculopathy around her mouth, hands, legs, and feet. R. 48. This causes a tingling and numbness. *Id.* Sometime this causes pain on the tips of her fingers, and itching in her feet and legs. R. 49. She has these problems once or twice a week. *Id.* Claimant testified she gets some relief from this condition from an over-the-counter lotion. *Id.*

Claimant testified her pain affects her ability to focus and concentrate. R. 49. She testified she can only work for about ten or fifteen minutes before the pain starts and she loses concentration. R. 50. Claimant testified she does not believe she can perform a sit-down job because she cannot sit for more than fifteen minutes. *Id.*

## 2. Aimee Mowery, Vocational Expert

The VE testified that Claimant previously worked as a fast food manager, department manager, and area supervisor. R. 52. These are skilled positions in which Claimant worked at a light, medium, or heavy exertional level. *Id.*

The ALJ asked the VE to consider an individual who can lift and carry ten pounds occasionally, and less than ten pounds frequently; walk or stand for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; never climb ladders, rope, or scaffolding; occasionally crouch, kneel, and crawl; push and pull occasionally; occasionally operate foot controls with her lower extremities. R. 53. This individual should also avoid work hazards such as heights and dangerous machinery, as well as exposure to lung irritants. *Id.* This individual

must be able to stand one to two minutes for every forty-five minutes of sitting, and should be allowed to use a cane for ambulation. *Id.* The VE testified that an individual with these limitations can work as an information clerk, order clerk, or interview clerk, and that there are 5,068 of these jobs available in the region. *Id.* The VE reported that these jobs would be available to an individual who needed a quad cane for ambulation and who was limited to simple, routine tasks, or to an individual who needed to elevate her legs using a foot stool. R. 53– 54. The VE reported these jobs would not be available to an individual who was off task twenty percent of the workday, or to an individual who needed to elevate her legs above her waist. R. 54. The VE reported that to qualify for these jobs an individual could only miss one day or less of work a month. R. 55.

## C. Medical Evidence

### 1. Back Pain

On December 3, 2009, Claimant saw Dr. William Ashley for lower back pain. R. 290. After evaluation, Dr. Ashley found evidence consistent with a left side radiculopathy and a herniated disc at L5-S1. *Id.* He recommended her to a colleague for surgical evaluation. *Id.*

On January 8, 2010, Claimant saw Dr. Geoffrey Dixon for an initial evaluation. R. 666– 68. On January 21, Claimant was admitted to Northshore University Healthsystem and underwent L5-S1 microdiscectomy with anular repair surgery. R. 678. Shortly after the surgery, a rehab consultation ordered by Dr. Dixon noted that Claimant's back pain had markedly improved. R. 675. A report from March 2010 found no evidence of recurrent disc herniation at L5-S1. R. 410.

In April 2010 Dr. Dixon diagnosed Claimant with lumbar spinal stenosis and status post lumbar microdiscectomy. R. 626. He found her "totally incapacitated" and unable to work. R.

5

626. On subsequent visits between May and September of 2010, Dr. Dixon found that Claimant's back pain was improving and that she was recovering well from surgery. R. 769, 780, 783, 787. An MRI from January 2011 indicated Claimant had mild degenerative retrolisthesis at L5-S1, but otherwise had normal alignment. R. 596. A subsequent lumbar x-ray from October 2011 showed Claimant had mild lumbar spondylosis with moderate thoracic spondylosis. R. 598.

### 2. Asthma

In March 2009 Claimant had two asthma attacks. R. 317. She went to see Dr. Jabr, who prescribed her an inhaler, Advair, prednisone, and Ventolin. *Id.* In a March 2011 visit, Dr. Jabr noted she had difficulty breathing and slight wheezing. R. 550. On visits in June, April, and February of 2011 Dr. Jabr found that Claimant's lungs were fine. R. 547, 549, 551. In December 2011 Claimant went to the clinic at St. Mary's Hospital complaining of wheezing. R. 871. She was diagnosed with asthma and given medication. *Id.*

### 3. Psychological Issues

Dr. Jabr noted Claimant's depression on multiple visits in 2010 and 2011 and prescribed Cymbalta for her. R. 546–47, 551, 552, 557, 560. In December 2011, Claimant was diagnosed with a single episode of major depressive disorder. R. 871.

In May 2010 Claimant underwent a psychological evaluation by Don White, Ph.D., for the Bureau of Disability Determination Services ("DDS"). R. 438. Dr. White noted that her past treatment consisted of taking Lexapro for depression. R. 438. He diagnosed her with mood disorder and recurrent major depression. R. 440. Dr. White found Claimant's memory was fine, that she had fair judgment, and that her concentration and ability to reason was adequate. R. 440. Dr. White found Claimant's reports generally credible. R. 440.

Based on this evaluation, in June of 2010 a DDS Psychologist completed a Psychiatric Review Technique. R. 444. The review found Claimant had mild restrictions of activities of daily living and mild difficulties in maintaining concentration, persistence, or pace. R. 451. Claimant had no difficulties in maintaining social functioning and no episodes of decompensation. R. 451. The review found Claimant had no severe mental impairments. R. 441. The review was affirmed upon reconsideration in October 2010. R. 493–94.

### 4. Edema and Leg Problems

Following Claimant's surgery in 2010, she complained to Dr. Dixon and other doctors of leg pain and numbness. R. 675, 751,759, 769, 783. In January 2010, a rehab consultation ordered by Dr. Dixon noted leg swelling and pedal edema. R. 676. Dr. Dixon noted on multiple occasions that her pain was improving. R. 751, 759, 769. He diagnosed her with "[s]welling of extremity" in July 2010. R. 800.

Dr. Jabr's treatment notes indicate Claimant's leg swelling and edema on multiple occasions in 2010 and 2011. R. 546–47, 552–53, 556, 557, 559, 560, 571. His treatment notes also indicate no edema on multiple occasions in the same time period. R. 549, 551, 554–55, 558, 561–62, 569, 570–71. Dr. Jabr diagnosed Claimant with right leg edema in his July 2010 Physical Medical Source Statement. R. 528.

### 5. Other Issues

In June 2009 Claimant was diagnosed with cervical cancer. R. 333. Dr. M. Dini performed a radical hysterectomy, left salpingo-oophorectomy, and pelvic lymphadenectomy. R. 334.

Claimant has diabetes mellitus type 2, for which she sometimes takes medication. R. 528, 874. Dr. Jabr noted that this condition was under control in a January 2011 visit. R. 552

Relating to a cardiac disorder, in January 2011 Claimant underwent an echocardiogram that showed an ejection fracture greater than 65%. R. 536–37.

In October 2008 Claimant was diagnosed with papilledema and possible pseudotumor cerebri. R. 496. An MRI and CT scan from August 2010 showed Clamaint's brain was normal. R. 470, 473. In a July 2010 visit, Claimant reported to Dr. Jabr she had vision changes but had not been to the eye doctor because the appointments took too long. R. 566. On two visits in 2011, Claimant complained to Dr. Jabr of headaches. R. 546–47.

### 6. Claimant's capacity to work

In July 2010 Dr. Jabr filled out a Physical Medical Source Statement for Claimant. R. 528–31. He diagnosed Claimant with diabetes mellitus type 2, hypertension, cervical cancer, lumbar spinal stenosis, asthma, depression, radiculopathy, and right leg edema. R. 528. He listed her symptoms as chronic low back pain, chronic headaches, abdominal pain, and leg edema. R. 528. He diagnosed Claimant with depression, but noted that emotional factors did not contribute to the severity of her symptoms. R. 528–29. Dr. Jabr opined that Claimant can sit for thirty minutes at one time, and stand for thirty minutes at one time; sit or stand/walk for less than two hours in an eight-hour workday; will need to have periods of walking in an eight-hour workday; will have to take roughly six breaks for fifteen minutes at a time during a working day. R. 529–30. He opined that Claimant's legs should be elevated three feet off the ground for 60% of the workday; that she must use a cane; that she can never lift less than ten pounds; that she can never twist, stoop, crouch, or climb stairs and ladders; that she would be absent about four days a month from a full time job. *Id.* In a separate letter written on the same day as the Medical Source Statement, Dr. Jabr opined that Claimant was unable to work due to her impairments. R. 464.

8

In October 2010, Claimant underwent a Functional Capacity Evaluation at Northshore University Healthsystem. R. 602. The physical therapist determined that Claimant "self limited her effort with lifting, bimanual carry and static pull tasks" and that her "perceived abilities, as measured on the Spinal Function Sort are not consistent with abilities objectively evaluated in the FCE." R. 603. The physical therapist found Claimant exhibited three out of five positive Waddell signs, indicating non-organic pain. *Id.* The physical therapist determined Claimant was capable of light work. R. 603.

In February 2010, Dr. Dixon opined that Claimant would be off work for four weeks. R. 623. Upon reevaluations in March and April of 2010, Dr. Dixon opined that Claimant was totally incapacitated. R. 630, 648. Following these evaluations, Dr. Dixon noted Claimant's improving condition on multiple occasions. R. 751, 759, 769, 780, 783, 787. In February 2011, Dr. Dixon met with Claimant to discuss the results of the October 2010 Functional Capacity Evaluation. R. 793. He performed a physical and noted Claimant had normal musculoskeletal tone, normal pedal pulses, normal gait, normal sensation, and normal strength with shoulder shrug and head turning. R. 794-95. His written notes reflect Claimant was in "[n]o acute distress." R. 794. Dr. Dixon determined that Claimant could return to work with the restrictions outlined in the October 2010 Functional Capacity Evaluation. R. 793.

## D. The ALJ's Decision

On May 18, 2012, the ALJ issued her decision finding that, from January 6, 2010 through February 28, 2011, Claimant was disabled under sections 216(i) and 223(d) of the Social Security Act. R. 13-24. As of March 1, 2011, however, the ALJ found that Claimant was not disabled. *Id.*

The ALJ reviewed Claimant's application under the required five-step sequential evaluation process. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since January 6, 2010. R. 16. At step two, the ALJ found that Claimant had the severe impairments of disc bulge L5-S1 and surgery, asthma, and obesity. *Id.* At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). R. 18.

The ALJ determined that, from January 6, 2010 through February 28, 2011, Claimant was unable to sustain work activity eight hours a day, five days a week. R. 18. At step four, the ALJ found that Claimant was unable to perform relevant past work during this period. R. 20. At step five, the ALJ found that there were no jobs existing in significant numbers in the national economy that Claimant could perform between January 6, 2010 and February 28, 2011. R. 21. The ALJ found that Claimant was disabled under the Social Security Act from January 6, 2010 through February 28, 2011. *Id.*

The ALJ then determined that Claimant's medical condition improved as of March 1, 2011, and applied the eight-step sequential evaluation process used in medical improvement cases. R. 21–23; *see* 20 C.F.R. § 404.1594(f). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since January 6, 2010. R. 16. At step two, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1594(f)(2)). *Id.* At steps three and four, the ALJ found that Claimant's medical improvement was related to her ability to work. R. 21–22. The ALJ skipped step five because she found medical improvement related to her ability to work. At step six, the ALJ

found that Claimant's severe impairments remained the same: disc bulge L5-S1 and surgery, asthma, and obesity. R. 16, 21.

The ALJ then assessed Claimant's RFC as of March 1, 2011, and found Claimant had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following specifications: she can occasionally push and pull, and occasionally use her lower extremities to operate foot controls; she can never climb ropes, ladders, or scaffolds; she can occasionally climb ramps or stairs, and occasionally balance, stoop, crawl, and kneel; she should avoid lung irritants as well as certain work hazards such as heights and dangerous machinery; she should be allowed to use a cane to move between workstations. R. 22. At step seven, the ALJ found that Claimant was unable to perform relevant past work. *Id.* At step eight, the ALJ found that, as of March 1, 2011, there were jobs existing in significant numbers in the national economy that Claimant could perform. R. 23. The ALJ found that Claimant's disability ended March 1, 2011. *Id.*

## II. LEGAL STANDARD

### A. Standard of Review

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere

scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions ... and must adequately articulate his analysis so that we can follow his reasoning ...."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). If the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B. Disability Standard

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739–40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairments meet or equal a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

If a claimant is determined to be disabled for a closed period, then an additional eight-step sequential evaluation is used to determine whether the claimant's disability continues. 20 C.F.R. § 404.1594(f)(1-8). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments meet or equal a listed impairment; (3) whether the claimant's medical condition has improved; (4) if there is medical improvement, whether that improvement is related to the

claimant's ability to work; (5) if no to steps three or four, whether any exceptions apply; (6) if yes to steps four or five, whether the claimant's impairments in combination are severe; (7) if the impairments are severe, whether the claimant can perform past relevant work; (8) if not, whether the claimant can perform other work. *Id.*

## III.   DISCUSSION

Claimant raises the following issues in support of her motion for summary judgment: (1) whether the ALJ sufficiently accounted for all of Claimant's impairments in assessing her RFC; (2) whether the ALJ sufficiently considered the combined effect of all of Claimant's impairments; (3) whether the ALJ properly analyzed Claimant's credibility. For the reasons discussed below, the Court affirms the decision of the ALJ.

### A.  The ALJ's credibility determination is not patently wrong.

Claimant argues that the ALJ's adverse credibility determination is flawed as the ALJ failed to provide specific reasons to support her findings. Cl.'s Br. 13 [ECF No. 22]. For the reasons discussed below, the Court finds the ALJ adequately explained her determination and it is supported by substantial evidence in the record.

An ALJ is in the best position to determine the credibility of witnesses, and this Court reviews that determination deferentially. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (*citing Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)). The ALJ has the discretion to discount testimony on the basis of evidence in the record. *Johnson v. Barnhart*, 449 F.3d 804, 806–807 (7th Cir. 2006). However, the basis for the ALJ's credibility determination must be articulated and "sufficiently specific" to make clear to a claimant and subsequent reviewers the weight given to a claimant's statements and the reasons for the weight given. SSR 96–7p. The

ALJ's credibility determination will be overturned only if it is "patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

In assessing Claimant's credibility, the ALJ noted a general lack of support for Claimant's testimony regarding her impairments, and that her improving condition was documented throughout the record. R. 22. The ALJ also heavily relied on Claimant's October 2010 Functional Capacity Evaluation. *Id.* This evaluation showed that Claimant "self limited her effort with lifting, bimanual carry and static pull tasks." R. 603. The evaluation also showed that Claimant's perceived abilities were much lower than her actual abilities. *Id.* In short, the evaluation showed that Claimant did not put as much effort into the physical tasks as she could have, and that she believed her condition was worse than it was.

The ALJ also noted that the October 2010 evaluation showed positive Waddell signs. R. 22. While Wadell signs alone are insufficient to support an adverse credibility determination, they can be used as supporting evidence. *See Hilmes v. Barnhart*, 118 F. App'x 56, 61 (7th Cir. 2004) ("[T]he Waddell signs, when considered with the inconsistencies between Hilmes' testimony and her medical records, sufficiently support his inference that she was exaggerating."). As discussed above, the ALJ had a good deal of other evidence supporting her adverse credibility determination, and thus was entitled to rely on positive Wadell signs as part of the mix of information to support her findings.

Claimant also argues that her testimony ought to be given more credit as it is supported by Dr. Jabr's July 2010 Physical Medical Source Statement. Cl.'s Br. 14 [ECF No. 22]. Dr. Jabr diagnosed Claimant with lumbar spinal stenosis, radiculopathy, and right leg edema. R. 528. He also opined that Claimant could only sit for less than two hours in an eight-hour workday, and that her legs should be elevated three feet off the ground for 60% of the workday. R. 529–30.

The ALJ, however, specifically discussed this report and assigned it reduced weight as it was issued almost a year before Claimant's treating neurosurgeon examined her and released her to work in accordance with the Functional Capacity Evaluation done in October 2010. R. 20. The Court finds ample support for the ALJ's conclusion in this regard.

An ALJ only is required to "minimally articulate" her reasons for discounting a physician's opinion – a standard deemed "lax" by the Seventh Circuit. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (*quoting Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). In the present case the ALJ met this standard when she articulated why she found that Claimant's condition had improved, and why she accordingly chose to assign reduced weight to Claimant's earlier medical reports.

The ALJ's finding of medical improvement is largely based on Dr. Dixon's February 21, 2011, opinion that Claimant could return to work. R. 21. Dr. Dixon is one of Claimant's treating physicians, and his opinion, as of February 21, 2011, is not contradicted by any medical evidence or the opinion of any other physician. It thus is entitled to great weight. *See* 20 C.F.R. §§ 404.1527(c)(2), 404.1527(c)(5); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). Moreover, Dr. Dixon has a long treatment relationship with Claimant, has had many visits with her, and is familiar with her array of impairments. *See, e.g., id.* at 665–67, 768–69, 800. He also is not predisposed to a finding of no disability, as he found Claimant completely unable to work for a period in 2010. R. 630, 648. It was not until much later, after noting Claimant's improving condition on multiple visits, *id.* at 751, 759, 769, 780, 783, 787, that Dr. Dixon found she could return to work. *Id.* at 793. Dr. Dixon's finding in this regard is supported by the "essentially normal" physical exam he conducted on Claimant during her February 2011 visit, R. 21, 794, as

well as the October 2010 Functional Capacity Evaluation that found she could perform light work. R. 603.

Given the evidence in favor of a finding of medical improvement, the ALJ did not err in relying on Claimant's later medical records instead of her earlier ones. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (favoring heavily "the most recent professional word" on the claimant's condition as opposed to two-year-old opinions.) Thus, the ALJ was not required to credit Dr. Jabr's July 2010 opinion as support for Claimant's testimony in the face of a more recent medical opinion and later medical records.

Accordingly, the Court finds that the ALJ's adverse credibility determination was adequately explained and well supported by the evidence. On this record, and contrary to Claimant's assessment, the Court cannot say the ALJ's credibility determination was "patently wrong."

## B. The ALJ sufficiently considered all of Claimant's limitations, both singly and in combination.

Claimant argues that the ALJ did not adequately consider Claimant's need to elevate her legs, her inability to sit for extended periods, her obesity, and her depression in arriving at her RFC determination. Cl.'s Br. 7–13 [ECF No. 22]. The Court addresses each of Claimant's arguments in turn below and finds that the ALJ sufficiently considered all of Claimant's limitations in making her RFC determination.

### 1. Leg Elevation

Claimant argues that the ALJ did not adequately consider her need to elevate her legs during the day. Cl.'s Br. 7–8 [ECF No. 22]. In making this claim, Claimant relies heavily on her hearing testimony where she expressed a need to keep her legs raised to alleviate the swelling.

*Id.* at 7-8. As explained above, however, the ALJ adequately supported her adverse credibility determination, and was therefore not required to fully credit Claimant's testimony on this point.

Claimant also attempts to draw an analogy to *Smith v. Astrue*, 467 F. App'x 507 (7th Cir. 2012). This attempt is unavailing. In *Smith*, the Seventh Circuit found error where the ALJ did not explain why she rejected the claimant's reports regarding her need to elevate her legs. *Id.* at 510–11. In the present case, however, the ALJ did provide reasons for discounting Claimant's testimony. First, the ALJ found Claimant only partially credible, and the Court has upheld that determination. Second, the ALJ noted Claimant's statement that she gets relief from water pills, as well as a general lack of evidence supporting a need to elevate her legs. R. 17, 22. *Smith*, therefore, is not analogous.

Claimant next argues that the ALJ erred by failing to consider a number of reports made by Dr. Jabr in 2010 and 2011 where he noted leg edema. Cl.'s Br. 9 [ECF No. 22]. This argument is unpersuasive. The ALJ discussed Dr. Jabr's July 2010 report that noted Claimant's edema and her need to elevate her legs. R. 20. After having done this, the ALJ was not further required to discuss every notation made on the issue. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("[T]he ALJ need not discuss every piece of evidence in the record."). Dr. Jabr's reports also do not evidence a need for Claimant to elevate her legs during the workday.[1] His reports on Claimant's leg swelling and edema are merely notations, and do not provide any elaboration on the severity of her condition or prescribe any particular work limitations. *See* R. 552, 553, 556, 557, 559, 560, 567. As such, these reports are similar to check-box forms, which the Seventh Circuit has referred to as "weak evidence." *Larson v. Astrue*, 615 F.3d 744, 750–51

---

[1] The only report where Dr. Jabr indicated a need for Claimant to elevate her legs, or for that matter prescribe any work-related limitations, is the July 2010 Physical Medical Source Statement. R. 530. As the Court has already noted, the ALJ expressly considered this report but gave it reduced weight in light of more recent medical evidence and opinions.

(7th Cir. 2010); *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)[2] ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). The evidence cited by Claimant is therefore not persuasive on this issue.

Accordingly, the ALJ's decision to discount Dr. Jabr's opinion and Claimant's hearing testimony in light of the more recent evidence in the record is supported by substantial evidence. Accordingly, the ALJ gave appropriate consideration to Claimant's report of swollen legs and her purported need to elevate them.

### 2. Obesity

Claimant next argues that the ALJ did not sufficiently consider the effect of her obesity on her edema and swollen legs. Cl.'s Br. 9 [ECF No. 22]. The Court disagrees.

As a general matter, an ALJ is required to "consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); 20 C.F.R. § 404.1523. In cases where obesity is an issue, the ALJ also must "specifically address the effect of obesity on a claimant's limitations." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *see also* SSR 02–1p ("[T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.").

In this case, the ALJ took note of Claimant's obesity in her opinion, and listed it as a severe impairment. R. 16, 20. The ALJ also specifically stated that, in making her RFC determination, she considered Claimant's obesity in accordance with SSR 02-1p, along with listing 1.00 for musculoskeletal disorders and listing 3.00 for respiratory disorders. *Id.* at 18. The ALJ, therefore, did consider Claimant's obesity in conjunction with her other impairments.

---

[2] The Court's discussion of form reports in *Mason* was cited with approval by the Seventh Circuit in *Larson v. Astrue*, 615 F.3d 744, 750–51 (7th Cir. 2010).

While Claimant argues that the ALJ's discussion of this issue should have been more thorough, it is not clear what more Claimant is looking for. No physician ever expressed the view that Claimant's obesity exacerbated her other impairments. In fact, according to Claimant's own briefs, the most detailed discussion of Claimant's obesity in the record are notations of her weight and height, along with a single notation of her BMI. Cl.'s Br. 9 [ECF No. 22]. Moreover, at the hearing in front of the ALJ, Claimant never brought up her obesity as an impairment, nor did she discuss its effect on her other impairments. *See* R. 30–56. Given the scant evidence available, the ALJ engaged in an appropriate discussion of the issue. Anything more would have led to speculation, a practice the Seventh Circuit has expressly admonished. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Furthermore, even if the ALJ's discussion of Claimant's obesity was inadequate, the error would be harmless. An ALJ's failure to discuss the effects obesity is harmless error when the claimant fails to "specify how [her] obesity further impaired [her] ability to work" and the ALJ adopts "'limitations suggested by the specialists and reviewing doctors' who [are] aware of the condition." *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006) (*quoting Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)). When an ALJ does this, the consideration of obesity is "factored indirectly into the ALJ's decision as part of the doctors' opinions." *Skarbek*, 390 F.3d at 504.

In the present case, while Claimant suggests that her obesity aggravates her swollen legs, she does not provide any medical opinions or evidence in support of this conclusion. Cl.'s Br. 9 [ECF No. 22]. This is not enough for Claimant to show that her obesity impairs her work abilities. *See Prochaska*, 454 F.3d at 737 (finding that the claimant had not specified "how [her]

20

obesity further impaired [her] ability to work" because she did not have any medical opinions or other evidence to support such a finding). The ALJ also reasonably relied on the recommendation of Claimant's treating neurosurgeon, Dr. Dixon, who opined that Claimant was ready to return to work. R. 19, 21. Dr. Dixon was certainly aware of Claimant's obesity, as he performed surgery on her and noted her weight and height in his discharge notes. R. 679. Moreover, notes from a pre-anesthetic evaluation at Northshore University Healthsystem indicated that Claimant has a history of "morbid obesity." *Id.* at 699. Since this evaluation was made just prior to Claimant's surgery, it is likely that Dr. Dixon, Claimant's treating neurosurgeon, was aware of it. Dr. Dixon also was well aware of Claimant's problems with her legs. He noted Claimant's leg numbness on multiple visits in 2010, *id.* at 751,759, 769, 783, and diagnosed her with "Swelling of extremity" in July 2010. *Id.* at 800. Additionally, a rehab consultation ordered by Dr. Dixon in January 2010 noted Claimant's leg swelling and edema. *Id.* at 675–76. In short, Dr. Dixon was well-versed on Claimant's impairments, including her obesity and her problems with her legs. The ALJ relied on his opinion, and therefore discussion of Claimant's obesity was indirectly factored into her decision. *See Skarbek*, 390 F.3d at 504.

### 3. Inability to Sit for Extended Periods

Claimant next argues that the ALJ failed to account for her inability to sit for extended periods. Cl.'s Br. 10 [ECF No. 22]. Claimant relies only on her own testimony that she is able to sit for only fifteen minutes at a time, and Dr. Jabr's July 2010 report that found Claimant could sit for less than two hours in a workday. *Id.* As the Court has already noted, the ALJ did not err in her adverse credibility determination, or in assigning reduced weight to Dr. Jabr's July 2010 opinion. Claimant's arguments on this point are therefore not persuasive.

### 4. Depression

Claimant finally argues that the ALJ failed to consider the effect of her depression on the rest of her impairments. The ALJ, however, thoroughly discussed Claimant's mental impairments. In her opinion, the ALJ noted Claimant had a history of taking Lexapro and Cymbalta, but did not find she had a severe mental impairment. R. 16–18. The ALJ discussed the 2010 psychological evaluation performed by Dr. White, who diagnosed Claimant with mood disorder and major depression. R. 17–18. The ALJ noted that Dr. White found that Claimant had fair judgment and no problems with memory, concentration, or attention. *Id.* The ALJ also discussed the Psychiatric Review Technique from June 2010 that found Claimant had no severe psychological impairments. *Id.*

Claimant argues that this discussion is inadequate, as the ALJ ought to have discussed the effect of Claimant's depression on her other impairments. Cl.'s Br. 12 [ECF No. 22]. This argument is not convincing, as Claimant never explains why or how her depression affects her other impairments. The record is not helpful either, as no doctor suggested that Claimant's depression affects her overall condition. In fact, Dr. Jabr, in his July 2010 Physical Medical Source Statement (on which Claimant heavily relies in this case), opined that emotional factors did not contribute to the severity of Claimant's symptoms and her limitations. R. 528. Based on this minimal evidence, the ALJ was not required to speculate as to how Claimant's depression might affect her other impairments. *See Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002) (noting that ALJs "must not narrowly confine their review to isolated impairments *when the record shows that the impairments have some combined effect*") (internal quotations omitted, emphasis added).

Moreover, the ALJ explicitly stated that she considered Claimant's impairments in combination, noting that "the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of [the listed impairments]." R. 21. In some cases the Seventh Circuit has deemed similar language sufficient. In *Nelson v. Bowen*, for example, the court of appeals found that the ALJ sufficiently discussed the claimant's physical and mental impairments in combination, and appears to have based this finding on the following language from the ALJ's opinion: "[t]he evidence does not show any medically determinable impairments which, *singly or combined,* preclude claimant from engaging in substantial gainful activity." 855 F.2d 503, 508 (7th Cir. 1988). The ALJ's use of similar language in the present case indicates she sufficiently considered the effect of Claimant's depression on her other impairments.

Accordingly, given the ALJ's thorough discussion of Claimant's depression, and the absence of any evidence regarding any aggravating effect of that condition on her other impairments, the Court finds the ALJ gave sufficient consideration to the issue.

## IV. CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant's motion for summary judgment (ECF No. 22) is denied. The Commissioner's cross-motion (ECF No. 24) is granted, and the Commissioner's decision denying Claimant's application for disability benefits is affirmed.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 26, 2015